IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Joseph E. Rubino, | NO. C 08-00696 JW |
| Plaintiff, | **ORDER GRANTING DEFENDANT SPANSION'S MOTION TO DISMISS WITH LEAVE TO AMEND; DENYING DEFENDANT SPANSION'S MOTION TO STRIKE** |
| v. | |
| ACME Building Maintenance, et al., | |
| Defendants. | |

## I. INTRODUCTION

Joseph Rubino ("Plaintiff"), in *pro per*, brings this action against ACME Building Maintenance ("ACME"), Spansion, Inc. ("Spansion"), and GCA Service Group of Texas L.P. Inc., alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

Presently before the Court are Spansion's Motion to Dismiss Portions of Plaintiff's First Amended Complaint, Spansion's Motion to Strike Portions of Plaintiff's First Amended Complaint, and Plaintiff's Motion for Leave to Amend his Complaint.[1] The Court found it appropriate to take the matter under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers

---

[1] On October 16, 2008, Plaintiff filed a Motion for Leave to Amend his First Amended Complaint. (Motion for Leave to File Second Amended Complaint, Docket Item No. 100.) Plaintiff improperly noticed the hearing on his Motion for October 20, 2008, the same date a hearing was to be held on Spansion's Motions. (Id.) On the same day that Plaintiff filed his Motion for Leave, the Court vacated the hearing on the Spansion's Motions and took the matter under submission. (See Docket Item No. 99.) In light of this Order, the Court GRANTS Plaintiff's Motion for Leave to Amend. However, Plaintiff must file a new Amended Complaint that is consistent with this Order.

submitted to date, the Court GRANTS Spansion's Motion to Dismiss with leave to amend, and DENIES Spansion's Motion to Strike.

## II.  BACKGROUND

In a First Amended Complaint filed on June 19, 2008, Plaintiff alleges as follows:

Plaintiff was employed by ACME and worked for Spansion under an agreement between ACME and Spansion.  (First Amended Complaint at 2, hereafter, "FAC," Docket Item No. 76.)  ACME discriminated against Plaintiff on account of his race, retaliated against him because of complaints filed with the Department of Fair Employment and Housing ("DFEH"), and eventually constructively discharged him.  (Id. at 4.)

Between July 2006 and October 2006, Plaintiff applied on multiple occasions to be a general mechanic for Spansion.  (Id. at 6.)  The flyers that advertised openings with Spansion stated that the job Plaintiff ultimately applied for was the same as the work Plaintiff had already been doing for Spansion via his employment with ACME.  (Id. at 7.)  Instead of hiring Plaintiff, Spansion hired a person of Asian decent.  (Id.)  Spansion not only refused to hire Plaintiff because of his race, but also in retaliation for prior complaints to the DFEH about ACME.  (Id. at 12.)

On the basis of the allegations outlined above, Plaintiff alleges three causes of action for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g):  (1) Disparate Treatment in Failing to Hire Plaintiff, against Spansion; (2) Disparate Treatment in Terminating Plaintiff, against ACME and Spansion; and (3) Disparate Treatment in Failing to Promote Plaintiff, against ACME and Spansion.

Presently before the Court are Spansion's Motion to Dismiss Portions of Plaintiff's First Amended Complaint (hereafter, "Motion to Dismiss," Docket Item No. 89), Spansion's Motion to Strike Portions of Plaintiff's First Amended Complaint (hereafter, "Motion to Strike," Docket Item No. 86), and Plaintiff's Motion for Leave to Amend.

### III.  STANDARDS

**A.     Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. __ , 127 S. Ct. 1955, 1974 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

**B.     Motion to Strike**

Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Ninth Circuit has held that "[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

However, "[m]otions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic."

Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003); See, e.g., Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 1028 (C.D. Cal. 2002). Accordingly, such motions should be denied unless the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit. SEC v. Sands, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995); LeDuc v. Kentucky Central Life Ins. Co., 814 F. Supp. 820, 820 (N.D. Cal. 1992). When considering a motion to strike, the court "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Securities Litig., 114 F. Supp. 955, 965 (C.D. Cal. 2000).

## IV.  DISCUSSION

**A.    Motion to Dismiss**

Spansion moves to dismiss Plaintiff's Second and Third Causes of Action as to Spansion on the ground that Plaintiff does not allege that he was an employee of Spansion.[2] (Motion to Dismiss at 3.)

Under Title VII, a plaintiff can bring a cause of action against an employer who causes the plaintiff to suffer disparate treatment. "A person suffers disparate treatment in [his or her] employment when he or she is singled out and treated less favorably than others similarly situated on account of race." Cornwell v. Electra Central Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006). To prevail on a claim of discrimination based on disparate treatment, a plaintiff must first establish a prima facie case that gives rise to an inference of unlawful discrimination. A plaintiff establishes a prima facie case of disparate treatment if he shows that: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated him differently than a similarly situated employee who does not belong to the same protected class. Cornwell, 439 F.3d at 1028 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the

---

[2] Spansion does not move to dismiss Plaintiff's First Cause of Action for Failure to Hire. (Motion to Dismiss at 4.)

4

1  defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory
2  conduct. If the defendant provides such a reason, then the burden shifts back to the plaintiff to show
3  that the employer's reason is a pretext for discrimination. McDonnell Douglas Corp., 411 U.S. at
4  802-805; Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003).

5        A plaintiff can also bring an action under Title VII against an employer who retaliates
6  against the plaintiff for engaging in protected activity. A plaintiff may establish a *prima facie* case
7  of retaliation by showing that (1) he engaged in activity protected under Title VII, (2) the employer
8  subjected him to an adverse employment decision, and (3) there was a causal link between the
9  protected activity and the employer's action. Passantino v. Johnson & Johnson Cons. Prods. Inc.,
10 212 F.3d 493, 506 (9th Cir. 2000).

11       Under both theories of liability, disparate treatment and retaliation, a plaintiff must establish
12 that the defendant is his "employer." See 42 U.S.C. 2000e(b). In some circumstances, a plaintiff
13 may treat a defendant who is not the plaintiff's direct employer as a "joint employer."[3] Two
14 employers may be considered joint employers if "both employers control the terms and conditions of
15 employment of the employee."[4] EEOC v. Pac. Maritime Assoc., 351 F.3d 1270, 1275 (9th Cir.
16 2004) (quoting Swallows v. Barnes & Noble book Stores, Inc., 128 F.3d 990, 993 n.4 (6th Cir.
17 1997)). The "joint employer" doctrine "recognizes that the business entities involved are in fact
18 separate but that they *share* or co-determine those matters governing the essential terms and
19 conditions of employment." Id. at 1276-77 (emphasis in the original).

---

[3] A business can also be liable to a plaintiff if it acts in concert with another business to form a "single employer." Under the "single employer" doctrine, two businesses are liable as a single employer where they have "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." Morgan v. Safeway Stores, Inc., 884 F.2d 1211, 1213 (9th Cir. 1989) (applying a four-part test promulgated by the National Labor Relations Board to a Title VII claim).

[4] The "joint employer" and "single employer" doctrines apply in the same manner across Title VII, Age Discrimination in Employment Act ("ADEA") and Americans with Disabilities Act ("ADA") claims. See Swallows v. Barnes & Noble Book Store, Inc., 128 F.3d 990, 992 n.2 (6th Cir. 1997) ("Because Title VII, the ADEA, and the ADA define 'employer' essentially the same way, we rely on case law developed under all three statutes.").

5

To determine whether a joint employment relationship exists, the Ninth Circuit applies an "economic reality test." EEOC v. Pac. Maritime Assoc., 351 F.2d at 1275. "In evaluating the economic realities of a given relationship, a court should consider all factors relevant to the particular situation." Id. The "collective experience of the judiciary and government agencies" has led to an "elaborate collection" of factors to consider in determining who is an "employer." Id. The Ninth Circuit has not identified a specific set of factors for Title VII cases. However, the Ninth Circuit has identified the following factors contained in implementing regulations of the Migrant and Seasonal Agricultural Workers Protection Act ("AWPA"):

> (1) the nature and degree of control of the worker; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the worker; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the worker; and (5) the preparation of payroll and payment of wages.

Id. (citing 29 C.F.R. § 500.20(h)(4)(ii); see also Guerin v. Genentech, Inc., No. C04-03099 JSW, 2005 WL 2739305, *2 (N.D. Cal. Oct. 24, 2005) (applying the five AWPA factors in the Title VII context); Wynn v. Nat'l Broadcasting Co., Inc., 234 F. Supp. 2d 1067, 1093-94 (C.D. Cal. 2002) (applying the five AWPA factors under the Fair Labor Standards Act). The Ninth Circuit has also held that courts should consider the following factors that have been developed in the case law:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon the alleged employee's managerial skill; (3) the alleged employee's investment in equipment or materials required for the alleged employee's task, or the employee's employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; (6) whether the service rendered is an integral part of the alleged employer's business; (7) ownership of property or facilities where work occurred; and (8) whether responsibility under the contracts between a labor contractor and an employer passes from one labor contractor to another without material change.

EEOC v. Pac. Maritime Assoc., 351 F.3d at 1275.

Here, Plaintiff does not make a specific allegation that Spansion was his employer. However, with respect to his employment relationship with Spansion, Plaintiff alleges as follows:

> [Plaintiff] was signed under [an] agreement or contract through ACME to work for Spansion. (FAC at 2.)

6

>Plaintiff . . . applied for a position of general mechanic by resume to Spansion while employed for ACME. [Plaintiff] put three resumes into Human Resources in person between July 07 when the first notice of an opening [came] up and Oct 4, 06 . . . . [Plaintiff] worked all the similar duties or assinments [sic] that [were required] of that position as [P]laintiff had worked on another shift for seventeen months. (Id. at 6.)

>On the fliers put out By [sic] Spansion they were seeking and hiring . . . for positions on another shift . . . which [P]laintiff had been doing for seventeen months. (Id. at 7.)

>Spansion employees had control [over] when and how [Plaintiff took] breaks. [He] worked through them. Spansion employees did not see [anything] wrong as working through their breaks [and] lunches as [the] job consisted of mostly sitting at a desk monitoring computers for alarms all night, and if you had to answer the phone. . . . [Plaintiff] wasn't getting the same benefits as Spansion Employees doing the same job as [Plaintiff] wasn't just getting [his] benefits. [Plaintiff] wasn't getting [his] overtime. [Plaintiff] wasn't getting [his] raises, [he] wasn't being allowed in the Saftey [sic] meetings of Spansion though [he] was doing the same job. (Id. at 10-11.)

>Spansion employees [h]ave a bunch of sick days to be off compared to one sick day off ACME had for plaintiff doing the [same] 12 hour day shifts . . . .

Plaintiff alleges that he performed the same work as Spansion employees, and that Spansion controlled certain circumstances of his employment–for example, his work duties and break schedule. Further, Plaintiff's allegations indicate that his work duties were performed on Spansion property solely for Spansion's benefit. However, it is not clear on the face of the Complaint whether both ACME and Spansion had the power to set Plaintiff's wages or to terminate his employment.

Accordingly, the Court GRANTS Spansion's Motion to Dismiss Plaintiff's Second and Third Causes of Action with leave to amend.

**B.     Motion to Strike**

Spansion moves to strike portions of Plaintiff's First Amended Complaint on the ground that eliminating any redundant, immaterial and impertinent allegations will further streamline this litigation. (Motion to Strike at 1.) In light of the Court's grant of Spansion's motion to dismiss, this motion is moot as to allegations contained in the Second and Third Causes of Action. However, since the Court is granting Plaintiff leave to amend, and in light of Plaintiff's *pro se* status, the Court addresses Spansion's motion to strike to provide Plaintiff guidance.

Spansion seeks to strike lengthy portions of the First Amended Complaint. However, upon review, the Court finds that these portions contain at least some allegations relevant to Plaintiff's

7

failure to hire claim. For example, Spansion seeks to strike Plaintiff's allegation that he "was fully qualified for" the job he applied for at Spansion. (FAC at 3.) This allegation is directly relevant to Plaintiff's failure to hire claim because an essential element of such a claim is that Plaintiff was qualified for the job to which he applied. McDonnell Douglas Corp., 411 U.S. at 802. Thus, at this time, the Court declines to order any portion of Plaintiff's Complaint stricken.

Accordingly, the Court DENIES Spansion's Motion to Strike Portions of Plaintiff's First Amended Complaint.

### V. CONCLUSION

The Court GRANTS Spansion's Motion to Dismiss Plaintiff's Second and Third Causes of Action with leave to amend, and DENIES Spansion's Motion to Strike.

On or before **January 15, 2009**, Plaintiff shall file an Amended Complaint consistent with this Order.

Dated: December 15, 2008

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

David Dong-In Sohn david.sohn@ogletreedeakins.com
Douglas J. Farmer doug.farmer@ogletreedeakins.com
Paul T. Hammerness paul.hammerness@doj.ca.gov

Joseph E Rubino
2151 Oakland Road #36
San Jose, CA 95131


**Dated: December 15, 2008**                    **Richard W. Wieking, Clerk**

                                                **By:  /s/ JW Chambers**
                                                     **Elizabeth Garcia**
                                                     **Courtroom Deputy**